IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STATE OF MARYLAND | : |
| vs. | : Case No.   8:19-cr-00348-PX |
| ALAKOM-ZED CRAYNE POBRE | : |
| Defendant | : |

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY

### I.  INTRODUCTION

The Defendant is charged in the above-captioned proceedings with violating 18 USC § 2252A(a)(5)(b) and (b)(2) (Possession of Child Pornography) and has been provided certain materials in Discovery in this case. After thorough review of that Discovery, Defendant propounded additional specific Discovery requests. After discussion about the need for this additional discovery and the reasons why it should be provided, the Government has advised Counsel that it will not provide the requested material. Defendant now seeks a Court Order directing the Government to provide the specific Discovery material requested.

### II.  STATEMENT OF FACTS AND RELEVANT BACKGROUND

Defendant was charged after a Search Warrant was executed on his home computer network and 3 alleged child pornography videos were found on the random access memory (RAM) of his computer system. According to the Discovery received to date, a Search Warrant was obtained after warrantless surveillance of a computer network known as "Freenet" allegedly revealed that Defendant's Freenet "node" may have requested certain child pornography videos. Additionally, Discovery revealed that the Maryland State Police Computer Crimes Section regularly conducted surveillance of this Freenet network using a special software hack created to automatically surveil network content without a warrant for the purpose of searching among

network users for the requestors of child pornography.

In order to understand the basis for this Discovery request, it is necessary to understand a little bit about the Freenet network. It is a network of linked computers designed to ensure freedom of communication over the internet. Freenet hosts websites, filesharing, forums, chat, microblogging, email etc, all anonymous and hosted within the Freenet network.

Rather than rely on central servers like many networks, Freenet stores data in fragments among its users. Each file is segmented into encrypted blocks and, through an automated process, randomly and anonymously distributed and stored among the many linked computers also called "nodes". Requests to retrieve the data are designed to maintain requestor anonymity as well. A request for data is routed through neighboring nodes and passed on to successive neighboring nodes until all of the blocks of a file are found and transmitted back through each computer and ultimately back to the requestor where the blocks are reassembled and decrypted. All types of content can be and are stored on Freenet from personal e-mails, to family videos to personal medical files, political tracts, books, movies, religious material, etc.

Freenet is open source software, freely available to anyone who wishes to use it. Those who choose to use it give up some of the benefits of using central servers. For example, Freenet runs very slowly and one cannot connect to services like Google or Facebook operating Freenet on their systems. But Freenet bills itself as a platform for censorship-resistant communication and publishing, designed to ensure true freedom of communication over the Internet. At least up until recently, users could be comfortable that they were not being spied upon and that their computer systems were secure from Government surveillance.

Discovery provided by the Government exposed that computer software experts have created a hack to the standard Freenet open source software which law enforcement used to surveil internet traffic over the Freenet. Using this hack, law enforcement had established its own

Freenet nodes[1] and began monitoring traffic passing through its nodes. The hack included a massive list of the "hashes'- long lines of numbers and letters - identifying blocks of child pornography files. When a request for a block with a hash value associated with child pornography was detected, law enforcement using a separate algorithm would attempt to calculate which Freenet user among the many mostly innocent users had requested the block.. Using the raw computing power of its automated system, the law enforcement software would then calculate the probability that a particular Freenet user at a particular IP address had originated the request for the encrypted blocks of a known child pornography file. By this method, law enforcement surveilled Freenet user activity without a warrant and monitored the content of communications passing over the Freenet.

After learning via Discovery where the Child pornography was allegedly found on his system and how the Maryland State Police determined the "probability" that the Defendant was a requestor of child pornography video files over the Freenet, the Defendant made the following specific Discovery request:

1)  Source code to the software used to connect to Freenet nodes and generate traffic analysis as described in the application and affidavit for Search and Seizure Warrant on the 9th page of that document in the first paragraph under "In support of this application…." including but not limited to any modifications made to standard Freenet software for any purpose.

2)  Configuration files used for running law enforcement Freenet nodes.

---

[1] A node is a computer that is running the Freenet program. *United States v. Dickerman*, No. 4:16-CR-00258-HEA-NAB-1, 2017 U.S. Dist. LEXIS 226787, at *5 n.2 (E.D. Mo. Sep. 26, 2017).

3) Source code for the software which created reports for the detected child pornography as contained on page 11 of the Discovery.

4) If different from the source code described in 3, the source code used to analyze the number of requests received, the number of peers a requester has and the number of blocks the file contains which was then used to "calculate if the volume of requests received is significantly more likely than not from the original requestor."

The Government's response follows:

> Response to requests 1 through 4: We will not turn over any source codes, software, or other law enforcement tools because disclosure would expose how law enforcement is able to track potential offenders. This is [in] line with several cases that have considered this issue. See, e.g., United States v. Popa, 369 F. Supp. 3d 833, 837 (N.D. Ohio 2019) (denying defendant's motion to compel production of law enforcement log files and software used in Freenet investigation because defendant was not accused of distribution).

Since this exchange, further conversations have taken place between counsel regarding this request. The Government has provided a transcript of testimony of Dr. Brian Levine, a Professor in the College of Information and Computer Sciences at the University of Massachusetts Amherst, who is credited with publishing an article and creating the Freenet hack which the Government has utilized in this investigation. Of course, the Defense has reviewed the Transcript and the peer reviewed article with interest but still has demanded the source code as stated above as discoverable under Federal Rule of Criminal Procedure 16(a)(1)(E)(i) and (ii).

### III.   ARGUMENT

The Government must disclose the source code and configuration files described in Defense Discovery Requests 1-4, above, (collectively, "Law Enforcement Source Code")

because the information is material to preparing the defense and the government intends to use it in its case-in-chief. Fed. R. Crim. Pro. 16(a)(1)(E)(i) requires the Government to:

> [P]ermit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense; or
>
> (ii) the government intends to use the item in its case-in-chief at trial…

Evidence is "material" under Rule 16 if it is helpful to the development of a possible defense. *United States v. Olano*, 62 F.3d 1180, 1203 (9th Cir. 1995). A defendant must make a "threshold showing of materiality" in order to compel discovery pursuant to Rule 16(a)(1)(E). "A party seeking to impeach the reliability of computer evidence should have sufficient opportunity to ascertain by pretrial discovery whether both the machine and those who supply it with data input and information have performed their tasks accurately." *United States v. Liebert*, 519 F.2d 542, 547-48 (3d Cir. 1975); *see also United States v. Dioguardi*, 428 F.2d 1033, 1038 (2d Cir. 1970) ("It is quite incomprehensible that the prosecution should tender a witness to state the results of a computer's operations without having the program available for defense scrutiny and use on cross-examination if desired.").

The Government has refused to disclose the Law Enforcement Source Code, "*[B]ecause disclosure would expose how law enforcement is able to track potential offenders.*" The Government has not claimed that the information is not material to the defense or that it does not intend to use the source code. Instead, the Government claims authority for withholding this critical information under a case from the U.S. District Court for the Northern District of Ohio, which considered a request for Law Enforcement Source Code related to Freenet, under circumstances that are different than those in the case at bar. Several U.S. District Courts have

addressed the circumstances under which the Government must produce law enforcement source code. *See United States v. Gonzales*, No. CR-17-01311-001-PHX-DGC, 2019 U.S. Dist. LEXIS 26061, at *14 (D. Ariz. Feb. 19, 2019) (compiling cases from several jurisdictions and analyzing two dissimilar cases with requests for law enforcement source code).

In *United States v. Popa,* 369 F. Supp. 3d 833, 837 (N.D. Ohio 2019), the District Court denied a defense discovery demand for Law Enforcement Source Code. The District Court found that the Law Enforcement Source Code was not disclosable under Fed. R. Cr. Pro. 16 both because it was not material to preparing the defense and because the Government was not going to use it in its case-in-chief. The Court's ruling on materiality rested on the belief that the source code was only relevant to a Motion to Suppress, rather than the defendant's guilt or innocence. *Id.* at 837. As to the Government's intent to use the code at trial, the Court did not believe that the Government would "rely on evidence derived directly from the software" or that the Government would "try to persuade the jury of the software's accuracy and reliability." *Id.* at 838.

In *United States v. Budziak*, 697 F.3d 1105 (9th Cir. 2012), the Ninth Circuit found that a District Court erred by refusing a defendant's motion to compel the Government to produce source code in a child pornography case involving an actual filesharing platform rather than a free-standing network like Freenet. In that case, the defendant argued that the FBI downloaded only fragments of child pornography from his hard drive, making it more likely that he did not knowingly distribute complete child pornography files. He also suggested that the FBI could have used the source code to change the sharing settings on the software installed on his computer. Budziak requested a copy of the source code in order to challenge both the elements of the offense and the law enforcement witnesses' credibility. The appellate court compared the request to a request for discovery related to a narcotics detection dog and found the software

similarly crucial to Budziak's ability to assess the program and the testimony of the FBI agents who used it to build the case against him. *Id.* at 1112.

The materiality and Government's likely use of the Law Enforcement source Code is different in this case than it was in *Popa,* warranting an independent review of the facts. Unlike in *Popa,* the Government will need to persuade the jury of the Law Enforcement Source code's accuracy and reliability in this case because the Government did not ultimately locate suspected child pornography files stored on the Defendant's computer but rather on his RAM. Moreover, the Government did not find the child pornography in this case on the computer with the IP Address mentioned in the Search Warrant.

The Government will have to convince the jury that its source code and related statistical analysis is accurate, reliable, and points to the Defendant's guilt of having knowingly possessed the child pornography files, beyond a reasonable doubt. The innerworkings of the Law Enforcement source code are a critical piece of the defense to the Government's case-in-chief, just as they were in *Budziak*. If the Government fails to produce a copy of the Law Enforcement source code prior to trial, the defense will be denied the opportunity to properly probe the software, present a line of inquiry to the jury, and impeach law enforcement investigators and expert witnesses who are likely to testify at trial as to whether the Defendant's computer actually requested the child pornography files allegedly found on his RAM or is instead a router of a request received from a neighbor being passed through his computer.

## IV.   CONCLUSION

The Defendant respectfully requests the following relief:

1. That Defendant's Motion to Compel Discovery be granted;

2. That the Court pass an order compelling the Government to produce;

a) Source code to the software used to connect to Freenet nodes and generate traffic analysis as described in the application and affidavit for Search and Seizure Warrant on the 9th page of that document in the first paragraph under "In support of this application…." including but not limited to any modifications made to standard Freenet software for any purpose.

b) Configuration files used for running law enforcement Freenet nodes.

c) Source code for the software which created reports for the detected child pornography as contained on page 11 of the Discovery.

d) If different from the source code described in 3, the source code used to analyze the number of requests received, the number of peers a requester has and the number of blocks the file contains which was then used to "calculate if the volume of requests received is significantly more likely than not from the original requestor."

Respectfully submitted,

/s/ Richard A. Finci

Richard A. Finci, Esquire
Houlon, Berman, Finci & Levenstein, LLC
7850 Walker Drive, Suite 160
Greenbelt, Maryland 20770
finci@houlonberman.com
Telephone: (301) 459-8200
Facsimile: (301) 459-5721

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of February 2020, a copy of the foregoing Memorandum in Support of Motion to Compel Discovery was served via filing in the electronic filing system to the Dwight Draughon, Esquire, Joseph Baldwin, Esquire Office of the United States Attorney, 6406 Ivy Lane, Greenbelt, Maryland 20770.

/s/ Richard A. Finci

Richard A. Finci, Esquire

Page **8** of **8**