*U*NITED *S*TATES *D*ISTRICT *C*OURT
*FOR THE*
*D*ISTRICT OF *M*ARYLAND
*Southern Division*

| | |
|---|---|
| United States of America | : |
| vs. | : Case No. 8:19-cr-00348-PX |
| ALAKOM-ZED CRAYNE POBRE | : |
| Defendant | : |

**DEFENDANT'S POST-HEARING MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL DISCOVERY**

Comes now the Defendant, Alakom-Zed Crayne Pobre, by and through counsel, Richard A. Finci, Esquire and the Law Offices of Houlon, Berman, Finci & Levenstein, LLC, G Arthur Robbins, Esquire, and CHESAPEAKE MERIDIAN, co-counsel, requesting relief from the Government's Post Hearing Failure to Comply with Discovery Obligations respectfully states as follows:

*Introduction*

This case is about a centrally coordinated linked network of law enforcement computers domestically deployed as a surveillance system in an internet overlay known as Freenet. Defendant has maintained that the broad surveillance system that collects data from all users for centralized screening by the Government violates Fourth Amendment expectations of privacy when operated by the Government without judicial oversight. The Court issued a memorandum opinion stating that none of the users of Freenet possess any

Fourth Amendment protection against the type of Government surveillance at issue here. (ECF Document 81 at pages 13 and 14)

The specific use of the surveillance system in this case was for the central coordinating server (referred to as ICAC Cops during the hearing) to take all Freenet user data collected by the coordinated array of Law Enforcement Nodes, and screen it for "block requests" that the Government had previously collected and assembled into a database of "block requests" associated with Child Sexual Abuse Material (CSAM).  If the server identifies a defined number of target block requests, it determines the IP address of the requesting computer and then determines the geographic location of the IP address.  An investigative "Lead" is then sent to the operator of the nearest Law Enforcement Node (Geographic location and Freenet proximity are completely unrelated.)  That operator takes the information sent by the coordinating server and loads it into a spreadsheet for analysis.  Based upon the spreadsheet report and the operator's assessment of the full files to which the Government database attributes the reported "block request", the operator of the law enforcement node becomes the affiant to seek a search warrant.

The Court left open the question of potential *Franks* issues with the warrant. One significant factor of whether the affidavit offered in support of the warrant survives Fourth Amendment analysis is whether the surveillance system, as deployed, provides results of sufficient accuracy that an affiant or magistrate can reasonably rely upon them to determine probable cause.

Throughout the month of May, the parties have worked to resolve two discovery issues; but have reached an impasse.  Exhibit 1 – email communications re discovery.

First, the Government was not willing to provide the actual software used to run the central server; but offered an external reliability report in its place.  The Defense agreed to assess the third party report with an eye to being able to forego examination of the actual software.  The report (submitted separately under seal as Exhibit 2) is unclassified, it is not "For Official Use Only", it is not "For Law Enforcement Use Only"; yet, the Government has excised section 6.4.1 (U), subsection 3.  That subsection (in paragraphs a. through i.) provides the requirements to mark a run "as a potential downloader run and move on to the math."  That subsection seems central to the ability of the Defense to assess whether the third party evaluation adequately tested the reliability of the software.

Second, the Government has provided a spreadsheet that purports to be the tool used to assess the ICAC Cops central server data lead by the affiant in this case[1]; however, the buttons ("macros") that actually allow use of the spread sheet have been disabled and their formulas hidden.  (a .pdf of the

---

[1] Testimony of Cory Mills, on 8 October 2021, at page 197, Line 17:
I'm taking the data that has been provided to ICAC Cops, putting it into the Excel Spreadsheet deemed to be the Freenet Target Summary, **and clicking -- I believe the button is analyze data**. It analyzes the data that I took from ICAC Cops by copying it off of ICAC Cops and pasting it into the Excel Spreadsheet.
Q. So it sounds like, and correct me if I'm wrong, that the spreadsheet is doing the analyzation of the data?
A. That's correct.  (emphasis added)

Spreadsheet and a screenshot of the disabled macro message are submitted separately under seal as Exhibit 3)

     We know that the spreadsheet data reports in this case included block requests that the Government's expert, Brian Levine said that he would not use.[2] File of Interest Number 2 also included a significant amount of data concerning blocks with a 16 HTL value that Dr. Levine explained were "not even part of this"[3], yet they clearly survived both the ICAC Cops screen and the spreadsheet analysis for File of Interest Number 2 to appear in the report upon which Trooper Mills relied to prepare his affidavit.  That reality bears directly upon the reliability of the system used to acquire the data upon which Trooper Mills and the magistrate relied.  If the system itself was unreliable, then the failure rises to the recurring, systemic level contemplated by the Supreme Court in *Herring v. United States*, 555 U.S. 135, 129 S.Ct. 695 (2009).   In the case of recurring, systemic level error, good faith by Trooper Mills as he used reports from an inherently unreliable system will save neither the affidavit nor the warrant.

---

[2]Testimony of Brian Levine, on 8 October 2021, at page110, Line 8:
Q. And directing your attention to the summary of File of
Interest 2, it looks like there are four different node columns. Is that correct?
A. Correct.
Q.  What does the green indicate at the bottom of each column?
A. So this is another way to relay what the logs show. So, for example, one of the rows is entitled Total Unique Requests Logged, and it says one under 1921, law enforcement node 1921.  Well, receiving one request is not very many. It's not informative. I wouldn't run the test.
[3] Testimony of Brian Levine, on 8 October 2021, at page164, Line 6.

For both the third-party validation study and the data assessment spreadsheet, the Government has hindered Defendant's ability to evaluate the reliability of the tool that purportedly provides probable cause for the warrant.

> The Government cannot hinder the Defense function with an empty assertion of Law Enforcement privilege.  In order to illustrate that the privilege applies, the party "must show that the documents contain information that the law enforcement privilege is intended to protect," which "includes information pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witness and law enforcement personnel [or] the privacy of individuals involved in an investigation, and information that would otherwise ... interfere[ ] with an investigation." In re The City of New York, 607 F.3d at 944 (quoting In re Department of Investigation of City of New York, 856 F.2d 481, 484 (2d Cir.1988) ) (internal quotations omitted). If "the party asserting the privilege successfully shows that the privilege applies, the district court then must balance the public interest in nondisclosure against 'the need of a particular litigant for access to the privileged information,' " as the privilege is qualified, not absolute. In re The City of New York, 607 F.3d at 948 (quoting In re Sealed Case, 856 F.2d at 272 ).
> *United States v. Matish*, 193 F. Supp. 3d 585, 597 (E.D. Va. 2016)

It is difficult to imagine how disclosure of an unclassified, unrestricted third party assessment can risk anything other than revealing that the Government may not have complied with the Levine Network Investigative design.  If the paragraphs contain characteristics of the screen being applied, it is likely to be mathematical description.  If it is characteristics of target block requests, then logic dictates that blocks cannot be requested without the characteristics described – thus even if there were publication, the worst outcome would be deterrence of the illegal conduct being investigated.  But the Court has the ability to issue a Protective Order so that the Government can provide the information in this case without risk of further dissemination.

Similarly, the only information protected by withholding the operation of the provided spreadsheet is whether the withheld macro formulas inject error to the reports generated and relied upon by law enforcement affiants. In worst case, the Government could correct the error in any formulas. None of the legally sufficient grounds to claim Law Enforcement privilege are present.

**Conclusion**. The Government must provide the balance of the necessary discovery, and the Defense must have time to assess it. The Defendant requests that the Court issue an Order to that effect.

Respectfully submitted,

___/s/_____
Richard A. Finci, Esquire
Houlon, Berman, Finci & Levenstein, LLC
7850 Walker Drive, Suite 160
Greenbelt, Maryland 20770
finci@houlonberman.com
Telephone: (301) 459-8200
Facsimile: (301) 459-5721


_____/S/_____
G Arthur Robbins (Federal Bar No. 09770)
CHESAPEAKE MERIDIAN
1997 Annapolis Exchange Parkway
Suite 300
Annapolis, Maryland 21401
443.454.7675
GarRobbins@ChesapeakeMeridian.com

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on this 14th day of June 2022, a copy of the foregoing Defendant's Memorandum in Support of Motion to Compel was served via filing in the electronic filing system to the Dwight Draughon, Esquire, Joseph Baldwin, Esquire Office of the United States Attorney, 6406 Ivy Lane, Greenbelt, Maryland 20770.

                                        /s/
                                  Richard A. Finci, Esquire