**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

STATE OF MARYLAND          :

     vs.                       :     Case No.    8:19-cr-00348-PX

ALAKOM-ZED CRAYNE POBRE    :

    Defendant            :

_____

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM ADDRESSING FRANKS AND SUFFICIENCY OF PROBABLE CAUSE ISSUES**

Comes now the Defendant, Alakom-Zed Crayne Pobre, by and through, Richard A. Finci, Esquire and the Law Offices of Houlon, Berman, Finci & Levenstein, LLC, counsel, and G Arthur Robbins, Esquire and CHESAPEAKE MERIDIAN, co-counsel, respectfully states as follows:

I.     **Introduction**

After the Court ruled that the Government's warrantless surveillance of the Freenet did not violate the Defendant's legitimate expectation of privacy (ECF 81), the Court directed that additional Discovery, sought by the Defense via Motion to Compel (ECF 94), be provided by the Government relating to the reliability of the probable cause set forth in the Affidavit for Search and Seizure Warrant in this case. The additional Discovery consisted of: 1) an Excel spreadsheet provided to and used by the Maryland State Police investigator in this case, containing the macro formulas he used to assess the data for probable cause and 2) a validation report of the

mathematical test component of the "Levine technique" software "FreenetRunsLib" prepared for the FBI by MITRE Corporation consultants[1]. The Court did not order the Government to produce the FreenetRunsLib software which generates the leads, in the form of data runs, sent to the various police agencies, including the State Police Officer affiant in this case.

Using this Discovery material, a Defense Expert was able to assess the reliability of the macro formulas built into the Excel spreadsheet which was the source of the substantive averments of probable cause contained in the Affidavit in this case and he has prepared a report describing his findings. His findings are further informed by testimony provided at earlier hearings by Dr. Levine, Trooper Mills and Detective Erdely, by Dr. Levine's two peer reviewed papers describing his method and by a basic understanding of the investigative process undertaken in this case. The Defense expert's findings are the foundation for the Defense contention that the Excel spreadsheet does not reliably verify that a data run lead satisfies the parameters of the Levine technique as represented by the affiant, Trooper Mills, in the search warrant affidavit. Furthermore, this false claim amounts to a *Franks* violation.

Prior to having the benefit of the testimony and receiving the additional discovery described above, the Defense filed a *Motion for a Franks Hearing and Incorporated Proffer in Support Thereof* (ECF 45), a *Motion to Suppress Physical Evidence* (ECF 46) and *Memorandum in Support* of both (ECF 47). This *Memorandum* will supplement the previously filed *Motions and Memorandum*, highlight the supporting evidence already in the record and focus the Court on the Defendant's argument that Frank's violations occurred and that there was no reliable basis for the affidavit of probable cause in this case.

---

[1] It should be noted that the MITRE "Roundup Freenet Validation Testing" report was completed in December, 2020, approximately 1 ½ years **after** the investigation in this case was completed.

II.     <u>Statement of Facts</u>

      **a.**      *The Freenet Investigative Technique*

The Court has received testimony about the nature, use and general operation of the underlying Freenet network and the investigative technique developed by Dr. Brian Levine to surveil the network. The Court has learned that ICAC Cops provides the central support for the surveillance system. First, the network of undercover law enforcement Freenet nodes collects all encrypted block request data that comes to those nodes from users of the Freenet network. Second, all encrypted block request data are sent to ICAC Cops to be screened against a database of block request data hash values that has been developed by law enforcement as being associated with CSAM.  Third, block requests that match block request data hash values in the ICAC Cops database are assessed, using Dr. Levine's algorithm, to attempt to statistically determine whether each block request came from a Freenet "neighbor" of a law enforcement node, or a more distant user.  Fourth, if the block request came from a Freenet "neighbor" of a law enforcement node, the ISP address can be determined by ICAC Cops.  Once the ISP address is determined, ICAC Cops sends the ISP address, and data collection run as an "investigative lead" to an investigator located in the physical jurisdiction of the ISP address. (Freenet "neighbors" and physical locations are totally independent.  Trooper Mills, the affiant in this case, did not know where the four Law Enforcement Nodes that collected the block requests at issue were located.  *See Exhibit* 1- Mills testimony on 8 October 2021, *Transcript @ page 211.*)

At the heart of the Levine formula are fundamental requirements for making observations, the existence of which are necessary components going to the claimed reliability of the investigative technique. These principles are described in Dr. Levine's two peer reviewed papers and, pursuant to the Government's stated standards and procedures developed for these

investigations, must be validated and confirmed by the local investigator prior to determining probable cause to seek a warrant.  Validation is accomplished by use of the Excel spreadsheet tool, pre-loaded with macro formulas to perform the task.  The Investigator wholly relies upon the Excel spreadsheet tool for probable cause that the given ISP address made the block request upon which a probable cause assertion is based.

**b.**     *The Role of Trooper Mills in the Investigative Process*

The local investigative process begins when ICAC sends leads consisting of suspicious data runs to the local investigator. The data runs include a number of different data elements. Trooper Mills testified about this process during the 8 October 2021 hearing; his testimony appears at pages 190-226 of the transcript. *See Exhibit* 1.  Trooper Mills received a certification of his training in ICAC Freenet Investigations after attending a 2-day course in 2018.

On direct examination, Trooper Mills described his role and the tasks he undertakes when investigating leads provided to him from ICAC Cops. *See Exhibit 1-Transcript* @ 195. He testified that he performed three tasks once he received a lead: 1) noting the IP address of the alleged requestor, 2) verifying that the referenced "manifest key" provided to him by ICAC Cops led to a CSAM file and 3) analyzing the block request data provided by ICAC Cops by copying the data into the Excel spreadsheet provided to him in his training to confirm that the block request data passes or fails his spreadsheet testing.

The resulting report generated is called the Freenet Target Summary. *See Exhibit* 1-*Transcript* @ 197. This report became the factual foundational basis for the contents of the search warrant. He further testified that block requests associated with three files of interest (hereafter foi's) must "pass" the spreadsheet testing before "sending off a subpoena to locate for [sic] the date and times of the request of who is in possession of that IP address…." *Id*. Three

files are necessary to show that the result was not an "isolated incident" and for confirming "that

the data is sound and correct." *Id*. Without three foi's passing on the Excel generated Freenet

Target Summary report, Trooper Mills testified that he could not go further with an investigation.

*See Exhibit 1-Transcript* @ 199.  He went on to testify that he had followed these procedures in

this case and that the three foi's before the Court all passed the Freenet Target Summary testing.

When questioned by the Court, Trooper Mills confirmed that to validate the information

provided to him by ICAC Cops, he copies the data into the Excel spreadsheet that he was

provided in training and clicks the analyze button. *Id*. @ pg 223-224. He does not do the Levine

math himself and has no understanding of the mathematical equation. *Id*. He does not and did not

verify that the calculations were correct nor that the data elements satisfied the Levine technique

parameters. If the pertinent cell in the Freenet Target Summary generated by the Excel

spreadsheet for each of the three files of interest indicates "pass", Trooper Mills moves to the

next stage of his investigation.

      **c.**      *The Excel Spreadsheet Validation Macros*

The Excel spreadsheet is designed to validate that the block request data runs for each of

the three files of interest sent to the investigator pass the necessary elements of the Levine

technique. These elements are laid out in detail in the two peer reviewed papers describing Dr.

Levine's technique. According to Dr. Levine's 2020 paper at page 6, a run is defined as:

    A collection of observations where:

- All observations are of requests for blocks associated with the same manifest.
- All observations are of the same peer, as identified by IP address and Freenet location.
- All requests have a consistent HTL [hops to live]
- A minimum of 20 requests for distinct blocks were observed
- The duration between requests does not exceed a defined value

*See Exhibit 2*-Document 57-1 Levine Peer Review report undated but reportedly presented in 2020.

The Freenet Target Summary generated by the Excel spreadsheet shows the results of the Spreadsheet analysis of each of these fundamental observations and each of these requirements are necessary elements to validate a "pass" result.

**d.**     *The Defense Expert has shown that the Macro Formulas in the Excel Spreadsheet Used by Trooper Mills Do Not Reliably or Accurately Validate Four of the Data Reliability Tests Required by the Levine Technique.*

The Freenet Target Summary report related to files of interest #2 and #3 in this case contained data points which did not satisfy required reliability elements of the Levine technique and which should have led to termination of the investigation due to failure of the Spreadsheet to reliably provide run data to establish the probability that the targeted IP address was the requestor of the CSAM.  Nevertheless, the Freenet Target Summary report "passed" the run, a fact sworn to in the Affidavit in Support of the Search Warrant in this case, which led to its issuance.

The Defense Expert conducted testing of the various macro formulas contained in the spreadsheet in a very simple manner. *See Exhibit* 3 & 4, Report and CV of Michael Miglianti dated 25 October 2022.  The actual data sets/runs provided to Trooper Mills by ICAC Cops as leads in this case were used to test the Excel spreadsheet reliability. For each test conducted, the Defense expert first edited the data set in a specific manner to test the validating principles at issue and then copied the edited data run into the Excel spread sheet in the same manner as Trooper Mills would enter data he received from ICAC Cops. The goal of each test was simply to determine if the Excel spreadsheet would "pass" or "fail" a run with the data as edited. The now undisputed results, as set forth in detail in the Digital Forensics Examination Summary Report prepared by Mr. Miglianti were that:

1.      The Excel testing fails to correctly test that the minimum number of requests of the same HTL are present for a valid data run.
2.      The Excel testing fails to correctly test that the minimum number of "observations" have been made from the same Law Enforcement Freenet node.
3.      The Excel spreadsheet does not require consistent HTL values as required by the technique to pass.
4.      The Excel spreadsheet does not consider the time span of the observations. In testing, the run passed even when the observations were modified to be **1000 days apart.**

**e.**      *The Government Expert's Response Misses the Point: Dr. Levine Opines that his Formula Works and Worked Correctly in this Case*

Initially, it should be noted by the Court that Dr. Levine does not dispute the specific findings set forth in part (d) above. The responsive report he has provided focuses on his opinion that his algorithm and the investigative technique itself are infallible. He does not even attempt to challenge the defense findings that the Excel spreadsheet programing does not test for data run errors or, as Trooper Mills would phrase it, that "the data is sound and correct". His position appears to be that even though the Excel spreadsheet is presented as a required element of the investigative technique and process, and even though the Affiant relies upon the Excel spreadsheet to determine whether there is basis to make a probable cause application; that is not important because the data behind the Freenet Target Summary report becomes the basis for probable cause and the source of the contents of the Search Warrant affidavit.  Dr. Levine argues that despite the Excel spreadsheet being the tool that the Affiant was trained to rely upon when asserting probable cause, it need not be properly programmed to verify the elements of the Levine technique because Dr. Levine can verify that original data in this case by his personal review.

A tool capable of returning false results cannot be validated merely by including some accurate results within its report.  The ability to return false results renders the tool not reliable under the 4th Amendment.

**f.**    *The Search Warrant-What the Search Warrant Avers About Freenet Investigations and the Investigation of This Case*

The Application and Affidavit for Search and Seizure Warrant (*See Exhibit 5-* Document 47-2, Application and Affidavit for Search and Seizure Warrant) includes averments describing the general functioning of Freenet operations and then further states:

> Law Enforcement Freenet nodes record requests that are sent to them and they are compared against these known keys to identify child pornography files being downloaded. The original requester node can be determined, with a fair probability, because the number of requests received is reduced significantly as each node forwards them [HTL]. Using the number of requests received, the number of peers a requester has and the number of blocks the file contains we can calculate if the volume of requests received is significantly more likely than not from the original requester. That a Freenet user requested blocks associated with a particular file on Freenet indicates that the user attempted to download the file's contents from Freenet. It does not indicate whether or not the user successfully downloaded the file.

The Affidavit describes the substantive basis for probable cause as follows (repeating basically the same content once for each of the 3 files of interest followed by a description of each file):

> …while reviewing data received by law enforcement nodes, Your Affiant observed IP address 71.246.207.59, with the Freenet location ID 0.665146656496141, requesting blocks of suspected child pornography files. While your AFFIANT cannot state with absolute certainty the user was the original requestor, based on a review of those requests it is significantly more probable than not that the user of IP address 71.246.207.59 was the original requestor of the files described below…

> *As to File of interest 1:*

> Your AFFIANT observed that between Sunday, June 24, 2018 at 1:35 PM UTC and Sunday, June 24, 2018 at 1:51 PM UTC the Freenet node at IP address 71.246.207.59 requested 29 unique blocks of the file with the SHA1 Hash of….

> *As to File of Interest 2:*

> Your AFFIANT observed that between Saturday, **June 23, 2018 at 41:18 PM UTC and Monday, June 25, 2018** at 3:57 UTC the Freenet node at IP address 71.246.207.59 requested **132 unique blocks of the file** with the SHA1 Hash of… [**emphasis added**]…

*As to File of Interest 3:*

Your AFFIANT observed that between Sunday, June 24, 2018 at 2:27 PM UTC and Sunday, June 24, 2018 at 2:55 PM UTC the Freenet node at IP address 71.246.207.59 requested 24 unique blocks of the file with the SHA Hash of…

The affidavit does not contain any description of the elements of the investigative technique as defined by Dr. Levine and nothing about Trooper Mills' validating role utilizing the Excel spreadsheet. The pronoun "we" -- used to describe who made the calculation that the IP address in question was the likely requestor--is undefined in the Affidavit.

Despite the use of present tense in the description, testimony has revealed that Trooper Mills was reviewing historical data, collected by Law Enforcement Nodes somewhere else in the country; but certainly not within his control. Testimony has also revealed that Trooper Mills has no idea how the calculations are made. He simply looks to see if the Excel spreadsheet passes the block request run data for runs of 3 separate files of interest; if so, he continues to work toward obtaining a Search Warrant. He is completely reliant on the pass/fail results of the spreadsheet, having been told in training that it is a reliable tool.

## III.   ARGUMENT

### A.   The Original Franks Motion Proffered Multiple Allegations of Misrepresentations and Omissions of Facts from the Search Warrant Which Can Now be Consolidated and Focused Based on Discovery Provided

*Defendant's Motion for Franks Hearing and Incorporated Proffer in Support Thereof* was filed on August 17, 2020, and can be found at ECF 45. The Motion alleges a series of material omissions of fact made either with intent to mislead the issuing Judge or with reckless disregard for whether the omission would make the affidavit misleading.

At the time that the original Franks Motion and Proffer was filed, Defendant had very limited Discovery regarding *Freenet Roundup* or the investigative process associated with it.

The only information about it was contained in the Search Warrant affidavit and what could be

gleaned from the Freenet Target Summary Report.  Additional Discovery was requested from the

Government but largely denied[2], leading to the filing of a *Motion to Compel Discovery* (ECF 31

& 32), a *Second Motion to Compel Discovery* (ECF 51) and a *Supplemental Motion to Compel*

*Discovery* (ECF 94). Through a series of hearings, the Court ultimately granted the *Motion to*

*Compel* in part (ECF 97), ordered the parties to meet and confer to reach an agreement as to how

additional Discovery materials would be exchanged and protected and ultimately, with this

agreement made, the additional Discovery described in Part I, **supra**, was provided.

The Court is now reviewing the record to determine the existence, *vel non*, of a *Franks*

violation requiring the suppression of the evidence acquired by the Government as a result of a

search warrant acquired on the basis of an affidavit by Trooper Mills, the investigating officer in

the case.

> **B.      Courts are Required to Evaluate a *Franks* Challenge to an Erroneous**
> **Probable Cause Determination by Engaging in a Cost Benefit Analysis**
> **Comparing the Impact of Suppression Against the Government Conduct**
> **Which is to be Deterred**.

The Fourth Circuit has articulated the Franks standard as applying two factors in

assessing the affidavit that supports the warrant to search.

> Under *Franks,* a defendant is entitled to suppression of evidence seized if,
> during the evidentiary hearing, "perjury or reckless disregard is established by the
> defendant by a preponderance of the evidence, and, with the affidavit's false
> material set to one side, the affidavit's remaining content is insufficient to
> establish probable cause." *Franks*, 438 U.S. at 156, 98 S.Ct. 2674. Defendants
> also may bring *Franks* challenges when the affiant has omitted material facts from
> the affidavit. *Wharton*, 840 F.3d at 168. "To establish a *Franks* violation, a
> defendant must prove that the affiant either intentionally or recklessly made a
> materially false statement or that the affiant intentionally or recklessly omitted
> material information from the affidavit." *Id.*  *Franks* thus has two distinct prongs,

---

[2] The Government did provide the first Levine "white" paper and his testimony from a prior case in response to the
requests for additional Discovery before the Motions to Compel were filed.

"requir[ing] proof of both intentionality and materiality." *Id. United States v. Pulley,* 987 F.3d 370, 376 (4th Cir. 2021).

The Fourth Circuit articulation of the standard focuses the perjury or reckless disregard question upon the Affiant:

> This court has stated previously that reckless disregard in the *Franks* context requires a showing that the affiant personally recognized the risk of making the affidavit misleading. *See Miller v. Prince George's Cnty., Md.*, 475 F.3d 621, 627 (4th Cir. 2007) (discussing *Franks* analysis in the context of a 42 U.S.C. § 1983 suit). What the officer-affiant *should* have known does not matter if he did not *in fact* know. Reckless disregard is a subjective inquiry; it is not negligence nor even gross negligence. To establish a *Franks* violation, the particular affiant must have been subjectively aware that the false statement or omission would create a risk of misleading the reviewing magistrate judge and nevertheless chose to run that risk. *United States v. Pulley,* Id. at 377.

Nonetheless, the Supreme Court has stated that if systemic error can be shown to have been present in the data considered in determining probable cause, then analysis of the subjective knowledge of Affiant is no longer controlling.  Suppression of evidence is inherently a court function of determining whether the Constitution protecting deterrent effect of disrupting the Government's specific prosecution outweighs the societal cost of the inadmissibility of the specific evidence.  The Supreme Court has recognized that in the case of systemic error by law enforcement, or reckless disregard of constitutional requirements by a component of the Government, then the deterrent effect of suppression can both be substantial and outweigh any potential harm to the justice system. *See Herring v. United States*, 555 U.S. 135, 147 (2009), 129 S. Ct. 695, 172 L.Ed.2d 496 (citing *Leon,* 468 U.S., at 909–910, 104 S.Ct. 3405).  That is the cost benefit analysis required of the Court: is deterrence of the Government conduct at issue significant enough to support suppression?  Any lesser standard of analysis would allow the Government to hide systemic error or reckless disregard of constitutional requirements behind

the specific ignorance of the Affiants who seek search warrants on the basis of the Government's

failures of omission or commission.

        **C.**        **The Affidavit in Support of the Search Warrant in this Case Contained Recklessly False or Misleading Statements or Omissions by Wholly Relying Upon an Excel Spreadsheet Tool that did not Screen Evidence to Ensure its Reliability.**

The Defendant's Expert's assessment of the Government's Excel spreadsheet tool

demonstrated that the spreadsheet can provide affiants with false positive reports stating that an

identified ISP address initiated the block requests tied to a file of interest when the data

collection does not meet the Government's own standards of reliability.  The potential of

returning false positives renders the tool unreliable.

By analogy, consider a drug canine named Bruno.  Bruno is only called to screen items,

vehicles, or people when a police officer has a suspicion that the item, vehicle, or individual has

contraband drugs.  Bruno always alerts positive when he is called to screen for drugs.  The police

rely on Bruno's positive alerts to conduct searches.  The police only find drugs one out of four of

the times that Bruno has told them to search.  The times where no drugs or contraband are found,

no further action is taken.  When contraband is located, prosecution follows.  Is Bruno a reliable

component of probable cause?  What about in those one-in-four positive alert cases where there

ultimately were drugs found?  Can he be said to be reliable because back-testing proved him out

in those cases?

In this case, Trooper Mills relied wholly on the Excel spreadsheet tool to determine

whether he had probable cause to seek a warrant.  Yet we know from both independent expert

assessment of the tool and from specific non-passing block request data runs that were included

in the warrant application, that the Excel spreadsheet tool provided to Trooper Mills was

unreliable.

Mr. Michael Miglianti tested the Excel spreadsheet tool and found specific issues that render the spreadsheet unreliable for the purpose that it was used.  He found 1) that the spreadsheet returned false positives;

> (The spreadsheet ensures 20 unique request blocks are present, but other important factors such as HTL values, time span, and number of law enforcement nodes present are not considered. This spreadsheet will "Pass", or validate data that, according to research, is not a valid run and should result in a "Fail" in the spreadsheet.)

and 2) that the Investigator/Affiant who used the tool was not given enough data to independently validate the spreadsheet's output.

> (The spreadsheet appears to summarize the various data runs for a File of Interest.  Summarized Data from the spreadsheet is presented to the investigator. This summary makes it difficult for the investigator to independently validate data that is retrieved from ICAC cops and the spreadsheet has determined to be a "Pass".)

Additionally, we know that specific unreliable information was used in developing the warrant.  For instance, one of the *Freenet* Target Summary reports [FOI 2] was logged over a period of nearly 48 hours, far longer than the "set window of time" required by the authors of the source code to validate the results used to obtain a search warrant.   Finally, Trooper Mills testified that he had no way, other than the Excel spreadsheet tool, to know whether he was working with reliable data when he submitted his affidavit.

The question is not whether a Government Expert can back-test a subset of the data included as part of the application for a specific warrant.  The question is whether the Government technique for determining probable cause is flawed and able to lead to constitutionally invalid searches.  Here, we have demonstrated that the Excel spreadsheet, that was written and used at the time of this case, has inherent flaws; and that the Affiant included data that is deemed unreliable under the Government's own standards.

Given the unreliability of the Excel spreadsheet, and the acknowledgement that Trooper Mills relied wholly upon the Excel spreadsheet to determine whether there was probable cause that the specific ISP address at issue made the block requests for the files-of-interest, that component of the affidavit must be suppressed and set aside.

**D.      With the Deficient Material Set Aside, "the affidavit's remaining content is insufficient to establish probable cause."  *Franks*, 438 U.S. at 156**.

The averments originating from the Excel spreadsheet reports were the only information in the affidavit that suggested criminality tied to the specific ISP address that was ultimately linked to Defendant's physical address.  Without that information, there is nothing in the affidavit that supports the request for warrant.

**III.      Conclusion**

The Warrant in this case was based upon a systemic failure that placed the Affiant in the

position of swearing to an unreliable data screening system that could not support a warrant.

Without a valid warrant, the search of Appellant's home and computers and his arrest are

unlawful under the Fourth Amendment; and all of the resultant evidence and derivative evidence

require suppression.  The indictment in this case must be dismissed.

Respectfully submitted,


 /s/  *Richard A. Finci*
Richard A. Finci, Esquire
Houlon, Berman, Finci & Levenstein, LLC
7850 Walker Drive, Suite 160
Greenbelt, Maryland 20770
finci@houlonberman.com
Telephone: (301) 459-8200
Facsimile: (301) 459-5721


 /s/  *G Arthur Robbins*
G Arthur Robbins (Federal Bar No. 09770)
CHESAPEAKE MERIDIAN
1997 Annapolis Exchange Parkway, Suite 300
Annapolis, Maryland 21401
Telephone: (443) 454-7675
GarRobbins@ChesapeakeMeridian.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of May 2023, a copy of the foregoing
Defendant's Supplemental Memorandum Addressing Franks and Sufficiency of Probable Cause
was served via filing in the electronic filing system to Michael Morgan, Esquire, Office of the
United States Attorney, 6406 Ivy Lane, Greenbelt, Maryland 20770.


 /s/  *Richard A. Finci*
Richard A. Finci, Esquire