**EXHIBIT 3**

# DIGITAL FORENSICS EXAMINATION REPORT



A subsidiary of Stern Strategies International, LLC (SSI)

**9200 Corporate Blvd, Suite 200 · Rockville, MD 20850**

**Phone: (301) 279 – 6700**

**PrudentialAssociates.com**

| Client: | Houlon, Berman, Finci, Levenstein, LLC | Forensic Examiner: | Michael Miglianti, CFCE |
|---|---|---|---|
| Case #: | POBR2022 | Title: | Digital Forensic Examiner |
| Date: | 10/25/2022 | Division: | Operational Technology Division |
| | | Phone Number: | (301) 279-6700 |

This report is confidential and may contain privileged information. Unauthorized distribution is not permitted.

**EXHIBIT 3**



# DIGITAL FORENSICS EXAMINATION SUMMARY REPORT

## Table of Contents

Introduction ........................................................................................................................................3

Executive Summary.............................................................................................................................3

Data Examined ....................................................................................................................................4

Background .........................................................................................................................................4

Spreadsheet Only Analyzes Unique Blocks.........................................................................................6

Roundup Freenet Validation Testing - Mitre Corporation................................................................13

Summarized Data is Presented to Detective ....................................................................................14

Conclusion.........................................................................................................................................15

Appendices........................................................................................................................................16

    Deliverables .................................................................................................................................16

    Expert Qualifications...................................................................................................................16

This report is confidential and may contain privileged information. Unauthorized distribution is not permitted.



## DIGITAL FORENSICS EXAMINATION SUMMARY REPORT

## Introduction

Prudential Associates was engaged to provide a technical review of evidence in the criminal case US v. Pobre.

Pobre was charged criminally following the government's investigation into the Freenet file sharing network. On behalf of defense counsel, Prudential Associates reviewed the investigative methods used by the government to establish probable cause.

## Executive Summary

- The detective relies on software that analyzes the network activity of law enforcement nodes operating on the Freenet network. The software used by law enforcement was designed to ensure the data runs (from logs gathered from law enforcement Freenet nodes) are analyzed in accordance with prior research to identify the likely requester of files from the Freenet network. This software analyzes potential data runs and results in an investigative lead accessible in the ICAC web portal.
- This data is later retrieved from the ICAC portal by a detective.
- The data retrieved by a detective is tested by the *Maryland case FTS 4.4.0 with Macros* spreadsheet. The *Maryland case FTS 4.4.0 with Macros* spreadsheet used by detectives offers minimal validation of run data that is retrieved from the ICAC portal. The spreadsheet ensures 20 unique request blocks are present, but other important factors such as HTL values, time span, and number of law enforcement nodes present are not considered. This spreadsheet will "Pass", or validate data that, according to research, is not a valid run and should result in a "Fail" in the spreadsheet.
- The spreadsheet appears to summarize the various data runs for a File of Interest. Summarized Data from the spreadsheet is presented to the investigator. This summary makes it difficult for the investigator to independently validate data that is retrieved from ICAC cops and the spreadsheet has determined to be a "Pass".

This report is confidential and may contain privileged information. Unauthorized distribution is not permitted.



# DIGITAL FORENSICS EXAMINATION SUMMARY REPORT

## Data Examined

Prudential Associates reviewed several documents provided to defense counsel during discovery, most notably[1]:

- Maryland case FTS 4.4.0 with macros, including raw data set
- Levine Peer Review Paper – Statistical Detection of Downloaders in Freenet – 2016
- Levine Peer Review Paper – A Forensically Sound Method of Identifying Downloaders and Uploaders in Freenet – 2020
- Testimony transcripts – United v. Dickerman, US v. Hall, US v. Pobre
- Documentation of Freenet as of September 29, 2021
- Date Reports for FOI- 1 (File of Interest), FOI-2, FOI-3, and a Freenet Target Summary for those files of interest
- Roundup Freenet Validation Testing – December 2020 – Mitre Corporation
- Affidavit for Search Warrant

## Findings

**Background**

Freenet is a peer-to-peer network operated over the internet. Access and use of the Freenet network requires specifically designed software. To upload data into the network, software is used to divide the files into smaller blocks and then inserted, or uploaded, to the Freenet network. These blocks are stored on nodes (other computers running the Freenet software) throughout the Freenet network.

To download a file, a requesting node must 'request' the various blocks of the desired file from other Freenet nodes (peers). These requests are first made of neighboring peers. If the neighboring peer does not have the requested block of data, the original request is then *relayed*

---

[1] In compliance with the Protective Order, signed by the Honorable Paula Xinis, dated 5/31/2022, some materials and data are under a protective order and may not be disclosed or shared.

This report is confidential and may contain privileged information. Unauthorized distribution is not permitted.



to other nodes until the requested block is found or the Hops-to-Live (HTL) value reaches zero. Every request that is relayed by a Freenet node decrements the HTL value to ensure the request will eventually expire if the block is not found within the network. (For detailed information regarding the Freenet network, please refer to the Levine peer review papers, 2016 and 2020).

Law enforcement (LE) developed an investigative technique to identify a node that is likely to be the requesting node for a file. To summarize, Freenet nodes controlled by law enforcement operate on the Freenet network. The law enforcement nodes have been configured to monitor requests (blocks and keys) from its neighbors. According to the testimony of Robert Erdely (USA vs. Alakom Zed Crayne Pobre 120221, page 51), all requests observed by a LE node are compared with a LE database containing data about known CSAM blocks and keys. If a match is found, an entry is made in a database that details the observations. Only request values of 18, 17, or 16 are logged and other values are reportedly deleted.

The data that is logged and sent to the LE server is listed in Table 1 of the Mitre RoundUp Freenet Validation Testing report.

A second analysis is performed by software to determine if the neighbor node is the likely requester of the CSAM data or merely a relaying node. This analysis is performed on the HTL 18, 17, or 16 records retained by the server. If the software analysis determines the neighboring node is the requester of a CSAM file, an investigative lead is generated within the ICAC portal. These leads are later reviewed by detectives to determine if a lead is relevant to their jurisdiction. This logged data (and analysis) becomes the basis of probable cause.

As described by the detective in this case (USA vs. Alakom Zed Crayne Pobre, 10/08/2021 page 201), data from the ICAC portal would be copied and then pasted into a spreadsheet for analysis. This process would be repeated two more times so that data for three files of interest will be analyzed by the spreadsheet. The detective will click an "Analyze Data" button in the spreadsheet. The spreadsheet will indicate a "Pass" if the data passes the statistical test indicating an IP address (node) is the likely requester of a file. The detective will also download the file from the Freenet network and confirm whether they believe the file meets the criteria of CSAM for the local jurisdiction.

Based on this testimony, it appears the detective is reviewing and using data provided to them by the ICAC portal and not logging the node data themselves. The likelihood the detective is using

This report is confidential and may contain privileged information. Unauthorized distribution is not permitted.



data gathered from their LE node is low. The detective is also relying on other software they never directly used to determine if the logged data from LE nodes accurately identifies a likely requester of a CSAM file. It appears the detective does not independently verify the data run by examining the specific observations associated with a valid data run. Rather, the detective relies on the spreadsheet to perform an automated check of the data.

Through discovery, I have been provided a spreadsheet named *Maryland case FTS 4.4.0 with macros* which is reportedly used by investigators to perform the analysis of the logged data. I was also provided with the logged data that was used for the current case.

I examined the spreadsheet to evaluate its validity in analyzing data as detailed in Dr. Levine's papers and testimony, as well as the Mitre validation report.

The spreadsheet was designed to display a "Pass" if the data run contains sufficient information identifying a likely requesting node, and a "Fail" if insufficient data is present. As shown later in this report, the spreadsheet performs little validation of the run data and will present false-positive "Pass" results. In this workflow, the investigator performs very little screening of the data and heavily relies on the ICAC portal to provide valid data. The spreadsheet provides minimal additional checks of the run data.

**Spreadsheet Only Analyzes Unique Blocks**

Page 6 of the 2020 Levine peer-reviewed paper defines a run as "a collection of observations where:"

- *all observations are of requests for blocks associated with the same manifest;*
- *all observations are of the same peer, as identified by IP address and Freenet location;*
- *all requests have a consistent HTL (detailed below);*
- *a minimum of 20 requests for distinct blocks were observed;*
- *the duration between requests does not exceed a defined value.*

Based on my review, it appears the spreadsheet will determine if the data run contains at least 20 unique blocks. The spreadsheet will report a "Pass" if 20 unique request blocks are present, and a "Fail" if 19 or less unique request blocks are present.

This report is confidential and may contain privileged information. Unauthorized distribution is not permitted.

## DIGITAL FORENSICS EXAMINATION SUMMARY REPORT

The below screenshot represents a test of FOI-3 with 19 unique blocks. As expected, the spreadsheet reports a "Fail" as 20 unique blocks are required.



**Final Entry on this Page**

This report is confidential and may contain privileged information. Unauthorized distribution is not permitted.

## DIGITAL FORENSICS EXAMINATION SUMMARY REPORT

The below screenshot represents a test of FOI-3 with 20 unique blocks. As expected, the spreadsheet reports a "Pass" as the required number of unique request blocks is present.



**Final Entry on this Page**

This report is confidential and may contain privileged information. Unauthorized distribution is not permitted.

**EXHIBIT 3**

## DIGITAL FORENSICS EXAMINATION SUMMARY REPORT

The below screenshot represents a test of FOI-3 with 20 unique blocks. The HTL values have been modified so that no HTL value is represented more than 10 times. The spreadsheet reports a "Pass" though this data run does not meet the minimal number of the same HTL value for a valid data run. This spreadsheet should indicate a "Fail".



**Final Entry on this Page**

This report is confidential and may contain privileged information. Unauthorized distribution is not permitted.



## DIGITAL FORENSICS EXAMINATION SUMMARY REPORT

The below screenshot represents a test of FOI-3 with 20 unique blocks. The HTL values have been modified so that no HTL value is represented more than 10 times. The 'LE ID' column has also been adjusted so that each 'LE ID' identifier is unique. The spreadsheet reports a "Pass". However, according to Dr. Levine's research, this should fail. There is a minimum number of observations that need to be made from the same LE node.

| Date/Time | Port | Type | HTL | Peers | LE ID | Split Keys |
|---|---|---|---|---|---|---|
| 2018-06-24 14:27:24 | 40477 | R | 18 | 75 | 2145 | KPwXXgGH |
| 2018-06-24 14:27:42 | 40477 | R | 17 | 75 | 2146 | w8BJvkUa3 |
| 2018-06-24 14:28:28 | 40477 | R | 16 | 76 | 2147 | S7wKILHwz |
| 2018-06-24 14:29:11 | 40477 | R | 15 | 74 | 2148 | 3xiMGfSpal |
| 2018-06-24 14:32:45 | 40477 | R | 14 | 74 | 2149 | UvMiepuKh |
| 2018-06-24 14:34:57 | 40477 | R | 13 | 73 | 2150 | drLDX7DqA |
| 2018-06-24 14:39:16 | 40477 | R | 12 | 73 | 2151 | aKFh6hkek |
| 2018-06-24 14:45:01 | 40477 | R | 11 | 76 | 2152 | -FCC~wvJy |
| 2018-06-24 14:46:42 | 40477 | R | 10 | 76 | 2153 | Kr8WDW~ |
| 2018-06-24 14:48:41 | 40477 | R | 9 | 74 | 2154 | SqpE58LsJ |
| 2018-06-24 14:49:02 | 40477 | R | 16 | 74 | 2155 | f72IIJM~yR |
| 2018-06-24 14:49:11 | 40477 | R | 15 | 74 | 2156 | sSGsC5uF |
| 2018-06-24 14:51:41 | 40477 | R | 14 | 75 | 2157 | 7Ae9cwQ-I |
| 2018-06-24 14:53:11 | 40477 | R | 18 | 76 | 2158 | b1d3GQOf |
| 2018-06-24 14:53:20 | 40477 | R | 18 | 75 | 2159 | nzTtbcjBT |
| 2018-06-24 14:53:50 | 40477 | R | 18 | 76 | 2160 | xhhMvfKzH |
| 2018-06-24 14:53:58 | 40477 | R | 18 | 76 | 2161 | c9EVD9j3m |
| 2018-06-24 14:54:44 | 40477 | R | 18 | 77 | 2162 | yykXSWEz |
| 2018-06-24 14:54:53 | 40477 | R | 18 | 77 | 2163 | vMaGio4Xd |
| 2018-06-24 14:55:23 | 40477 | R | 18 | 77 | 2164 | Phx6zhnU1 |

Spreadsheet summary:
- File of Interest #3, Stat Test: Pass
- Geo Location: US,MD, Columbia
- Possible File Name: Webcam-Keila 11yo Redhead SUPER HO
- SHA1(base32): ICELHH4OE
- Total/Min. Blocks: 3,566 / 1,769
- IP: 71.246.207.59
- Total Time Span: 0:27:59
- Time Span: 27 min 59 seconds.
- Rows Analyzed: 20
- % of Even Share of Tot.: 42%
- % of Even Share of Min.: 85%
- 75.2 = Average Peers (all Records)
- 20 = Total Records
- 0 = Total Insert Records
- 20 = Total Request Records
- 20 = Total UNIQUE Request Records
- 20 = LE Nodes found
- 0 = Inserts (Filtered List)
- 75.2 = Average Peers (Filtered List)
- 20 = Total UNIQUE Requests (filtered)
- 20 = Total Requests (Filtered List)

On Page 3 of the 2020 Dr. Levine peer reviewed paper, the following information is provided.

> *To anonymize the requester, a requesting node will randomly choose, with probability 0.5, whether to use 18 or 17 before originating a request to a peer. Once an initial HTL value is selected, it is permanent for all originating requests sent to that peer. The decision also applies when relaying requests received with an HTL of 18. Insert requests have some variations in behavior (see §4.4). Regardless, the HTL does not reveal the originator. For clarity, we describe requests with an HTL of 18 or 17 as potentially being from a requester, and 16 or below as not being from a requester. However, our technique would work even if other initial HTL values were selected by a user.*

This report is confidential and may contain privileged information. Unauthorized distribution is not permitted.



**DIGITAL FORENSICS EXAMINATION SUMMARY REPORT**

On Page 6 of the 2020 Dr. Levine paper, the following information is also provided.

> **Consistent HTLs.** *In defining runs of* r *requests, we require consistent HTL values. Data requests are by default sent with either an HTL of 18 or 17, and the same HTL value is used for all requests to the same peer. We require that data requests have HTLs of 18 or 17, but not both. Like data requests, insert requests are initiated with an HTL of 18 or 17, but Freenet may resend the request with a lower HTL value. When testing for uploaders, we require that the run consist of only HTL 18 and 17, or only HTL 17 and 16.*

The spreadsheet does not appear to conform to the parameters outlined in the above two passages.

The spreadsheet does not take into consideration the time span or duration of the observations. For example, FOI-3 has an observation time span of 28 minutes and 18 seconds.



**Final Entry on this Page**

This report is confidential and may contain privileged information. Unauthorized distribution is not permitted.


## DIGITAL FORENSICS EXAMINATION SUMMARY REPORT

The spreadsheet will report a "Pass" regardless of the time span or duration. For example, the below screenshot represents a test where the last date/time of an observation was changed to 2021-03-20 14:55:42. This modification results in a time span of approximately 1000 days.

[Screenshot showing File of Interest #3 with Stat Test: Pass, Geo Location: US,MD, Columbia, Possible File Name: Webcam-Keila 11yo Redhead SUPER HO..., SHA1(base32): ICELHH4O..., Total/Min. Blocks: 3,566 / 1,769, IP: 71.246.207.59, Total Time Span: 24000:28:18, Time Span: 1000 days, 28 min 18 seconds, Rows Analyzed: 24, % of Even Share of Tot.: 51%, % of Even Share of Min.: 102%, Average Peers (all Records): 75.3, Total Records: 24, Total Insert Records: 0, Total Request Records: 24, Total UNIQUE Request Records: 24, LE Node(s) found: 2145, 2161, Inserts (Filtered List): 0, Average Peers (Filtered List): 75.3, Total UNIQUE Requests (filtered): 24, Total Requests (Filtered List): 24. Data rows from 2018-06-24 to 2021-03-20 14:55:42 on port 40477, Type R, HTL 18, with Peers values 73-77, LE ID 2145 and 2161.]

While the *defined value* for "the duration between requests does not exceed a defined value" detailed in Dr. Levine's study does not appear to be explicitly referenced, a time span of over 1000 days would seem to be obviously excessive and should accordingly result in a "Fail" in the spreadsheet.

The spreadsheet is providing minimal validation of logged run data and indicates a "Pass" in multiple scenarios when it should indicate a "Fail". The detective is not presented the specific observations of the data run that indicate a "Pass", and therefore is not easily able to verify or validate independently whether the dataset truly represents a "Pass". The detective is relying on third-party sources to provide valid data.

This report is confidential and may contain privileged information. Unauthorized distribution is not permitted.



# DIGITAL FORENSICS EXAMINATION SUMMARY REPORT

### Roundup Freenet Validation Testing - Mitre Corporation

I reviewed the Roundup Freenet Validation Testing report provided to defense through discovery, including Page 6 which is subject to the Court's Protective Order.

The validation testing was conducted of the *FreenetRunsLib* and does not appear to be part of the *Maryland case FTS 4.4.0* with macros spreadsheet.

This software appears to be used on the ICAC server to analyze observation records recorded by the ICAC server with data supplied by LE nodes.

The Mitre validation study represents a third-party audit of the software and its logic. I have not been able to review this software to confirm the findings of the validation testing or to conduct further testing.

The Mitre validation study does not reference or specify an acceptable duration of time that is used in validating a data run.

It appears the data supplied to the detective in the ICAC portal has already been validated by this software. Given my observations of the various test conditions of the spreadsheet and how it will "Pass" data that would be an expected "Fail", the spreadsheet appears to offer minimal testing of the data runs.

Given the workflow, no evidence is provided that a detective has independently validated the data that was analyzed by this software. The FreenetRunsLib software performs the primary analysis of logged data in identifying whether a node is a likely requesting node.  The detective's affidavit does not make a specific reference to this software.

**Final Entry on this Page**

This report is confidential and may contain privileged information. Unauthorized distribution is not permitted.



Case 8:19-cr-00348-PX   Document 107-3   Filed 05/05/23   Page 14 of 17                        **EXHIBIT 3**

# DIGITAL FORENSICS EXAMINATION SUMMARY REPORT

### Summarized Data is Presented to Detective

The spreadsheet is used by the detective to evaluate whether a particular data set meets the analysis criteria. This summarized data includes data that, for example, if separated by Law enforcement node or by HTL value, may not independently meet the analysis criteria for a "Pass".

The investigator is not shown the underlaying 'subset' of data that the spreadsheet or FreenetRunsLib software has determined meets the analysis criteria to identify a requesting node. As a result, it would be difficult for the investigator to independently evaluate a particular data run to verify or determine if the data would represent a *Pass*.

As detailed in the Affidavit for Search Warrant, it does appear the investigator relies on the summarized data from the spreadsheet to establish probable cause.

For example, the information contained in the Affidavit is partially shown below (please note the referenced dates and times):

> Your AFFIANT observed that between Saturday, June 23, 2018 at 4:18 PM UTC and Monday, June 25, 2018 at 3:57 PM UTC the Freenet node at IP address 71.246.207.59 requested 132 unique blocks of the file with the SHA1 Hash of

A portion of the summary information for FOI-2 is shown below:

|  | Overall Totals: | Filtered: 155 Rows | LE # 1921 | LE # 2145 | LE # 2161 | LE # 1809 |
|---|---|---|---|---|---|---|
| First Block Observed | 2018/06/23 16:18:26 | 2018/06/23 16:18:26 | 2018/06/23 16:18:26 | 2018/06/23 20:26:38 | 2018/06/24 07:56:49 | 2018/06/25 01:35:46 |
| Last Block Observed: | 2018/06/25 15:57:04 | 2018/06/25 15:57:04 | 2018/06/23 16:18:26 | 2018/06/25 15:57:04 | 2018/06/24 08:21:21 | 2018/06/25 01:35:46 |
| Overall Runtime: | 47:38:38 | 47:38:38 | 0:00:00 | 43:30:26 | 0:24:32 | 0:00:00 |

The investigator provided the overall, or summarized, dates and times in the Affidavit, though two law enforcement nodes contain data that would not independently pass the analytical test to determine if it is a requesting node. Moreover, LE #1921 contains only one data point and happens to be the first observed piece of data. As a result, this one data point marks the first observed date/time for this file of interest and is noted in the affidavit. Independently, the data contained in LE #1921 would be a "Fail".

This report is confidential and may contain privileged information. Unauthorized distribution is not permitted.



**EXHIBIT 3**

**DIGITAL FORENSICS EXAMINATION SUMMARY REPORT**



In this situation, it would be more accurate to reference the first date and time a data run begins that meets the evaluation criteria for a "Pass" and not merely the first data point seen for all the observations. The spreadsheet does not clearly identify the specific data points of the run that would "Pass" the analysis, and thus, identify the likely requester of a file.

## Conclusion

The spreadsheet offers minimal testing of the data run. At best, it appears to ensure 20 unique request blocks are present in the data run and to summarize the overall run data. The spreadsheet does not accurately test for HTL values, the number of LE ID peers, or the time span of the observations.

The 'raw' data used by the investigator for analysis is retrieved from the ICAC portal and is copied/imported into the spreadsheet. This 'raw' data is sourced from observations of Freenet traffic seen by the network of law enforcement nodes. The 'raw' data appears to be processed by software that, according to the Mitre validation testing, conforms to Dr. Levine's research. Should a specific set of data statistically identify a likely requesting Freenet node for CSAM files, an ICAC investigative lead is generated and available for review by detectives. This data is retrieved by the detective for a particular jurisdiction and analyzed by the *Maryland case FTS 4.4.0 with macros* spreadsheet. This spreadsheet appears to offer minimal testing of the data run outside of ensuring 20 unique blocks of data are present but does provide a summary of the data run. However, this summary information is used as the basis of probable cause for an investigation.

The spreadsheet does not clearly identify the specific data points that represent a "Pass" data run. Without this functionality, it is difficult for the investigator to independently validate the

This report is confidential and may contain privileged information. Unauthorized distribution is not permitted.



**DIGITAL FORENSICS EXAMINATION SUMMARY REPORT**

"Pass" finding. The investigator is relying on data supplied by ICAC Cops and the FreenetRunLib software to provide valid data and form a basis for probable cause.

# Appendices

## Deliverables

This report is the sole deliverable.

## Expert Qualifications

Michael Miglianti

Michael Miglianti is a forensic examiner for Prudential Associates. In this role, he supports the company's service offerings in digital forensics, incident response, and information security. He also serves as a subject-matter expert for litigation requiring technical analysis.

Mr. Miglianti has amassed hundreds of hours of training and has years of experience in the digital forensics and cyber-security fields. He has attended training hosted by the National White Collar Crime Center, the United States Secret Service (NCFI), Magnet Forensics, the SANS Institute, ASCLD/LAB (ANAB), the US Homeland Security Investigations Cyber Crimes Center, and various vendors for the purpose of training to use their software. Mr. Miglianti maintains his proficiency through ongoing training and continuing education. He is currently enrolled in the SANS Technology Institute Cybersecurity Engineering (Core) graduate certificate program.

His current certifications include:

- Certified Forensic Computer Examiner (CFCE) from the International Association of Computer Investigative Specialist (IACIS

- Global Information Assurance Certified Forensic Analyst (GCFA) from the SysAdmin, Audit, Networking, and Security (SANS) Institute

- Global Information Assurance Security Essentials (GSEC) from the SysAdmin, Audit, Networking, and Security (SANS) Institute

This report is confidential and may contain privileged information. Unauthorized distribution is not permitted.



**DIGITAL FORENSICS EXAMINATION SUMMARY REPORT**

- GIAC Advanced Smartphone Forensics (GASF) from the SysAdmin, Audit, Networking, and Security (SANS) Institute

- GIAC Enterprise Vulnerability Assessor (GEVA) from the SysAdmin, Audit, Networking, and Security (SANS) Institute

- GIAC Certified Enterprise Defender (GCED) from the SysAdmin, Audit, Networking, and Security (SANS) Institute

- Magnet Certified Forensic Examiner (MCFE) – Magnet Forensics

- Certified Cyber Crime Examiner (3CE) – National White Collar Crime Center

- Cellebrite UFED Physical and Logical Pro Certification

Previously held certifications include AccessData ACE, Comptia A+ and Comptia Security+.

Mr. Miglianti is a 20-year veteran of the Montgomery County, Maryland Department of Police. During his time as a patrol officer, he was a Field Training Officer (FTO) and trained new officers after they graduated entry-level training. He testified regularly as a fact witness in traffic, misdemeanor, and felony offenses. He served for about 2 years as a station level detective and several months as a detective in the Child Exploitation Unit. In 2012, he earned his first digital forensic certificate from the International Association of Computer Investigative Specialists (IACIS). He also began to work closely with the department's Electronic Crimes Unit by supporting their operations and conducting examinations of mobile devices and computers. He was assigned full-time to the unit in 2016. Mr. Miglianti has qualified and testified as an expert witness in judicial proceedings in Montgomery County, Maryland and the United States District Court for the District of Maryland for cases ranging from stalking, fraud, sexual assault, burglary, robbery, and homicide.

This report is confidential and may contain privileged information. Unauthorized distribution is not permitted.