**EXHIBIT 5**

## APPLICATION AND AFFIDAVIT FOR SEARCH AND SEIZURE WARRANT

To: The Honorable _Wayne A. Brooks_ Judge of the District Court of Maryland, in and for ___Howard___ County, Maryland.

Application is herewith made for a Search and Seizure Warrant in that there is probable cause to believe a crime is being/has been committed, and there are fruits of a crime and/or evidence related to the commission of the crimes:

**Child Pornography**, specifically:

> Criminal Law, Section CR 11-207
> Criminal Law, Section CR 11-208

of the Annotated Code of Maryland, as amended and revised, being contained/secreted in or upon a certain property depicted in the following images:



The property is known as **13504 Briarcroft Court, Laurel, Prince George's County, Maryland 20708** and can be identified by *Trooper First Class C. Mills #6293* of the Maryland State Police.

The target location is a single-family rancher. The exterior of the residence is constructed of beige siding with dark colored shutters and a dark colored roof. The numbers 1-3-5-0-4 are affixed vertically on the right side of the front door. There is a green mailbox at the entrance of the concrete driveway with the numbers 1-3-5-0-4 affixed horizontally on the right side of the mailbox.

**EXHIBIT 5**

## APPLICATION AND AFFIDAVIT FOR SEARCH AND SEIZURE WARRANT

The name of Your AFFIANT is Maryland State Police, ***Trooper First Class C. Mills #6293***, Criminal Investigator, currently assigned to the Criminal Enforcement Division (CED), Computer Crimes Section, in Howard County, Maryland.

Your AFFIANT, ***Trooper First Class C. Mills #6293***, is a duly sworn law enforcement officer of the Maryland State Police (MSP) with five years of law enforcement experience. Your AFFIANT has worked as a patrol trooper at the Westminster Barrack, Frederick Barrack and currently as a criminal investigator with the Computer Crimes Section of the MSP Criminal Enforcement Division.

Your Affiant has been involved in numerous investigations as a uniformed officer leading to the arrests of suspects involved in a wide range of criminal violations. While attending the Maryland State Police Academy Your Affiant was trained in the basis of Maryland Criminal Law. Your Affiant has been re-educated yearly and successfully completed the mandatory education by the Maryland Police Training Commission. Your Affiant has completed the following additional specialized training:

Internet-Related Investigations and the Dark Web Course, ICAC IT, ICAC GigaTribe Investigations, The Reid Technique of Investigative Interviewing & Positive Persuasion for Child Abuse Investigations, ICAC Freenet Investigations, Child Protection System Investigations, BitTorrent Investigations, Street Narcotics Investigations for Road Patrol Course, Fourth Amendment Search & Seizure Course, Regional Auto Theft Task Force Basic Investigators School, Gang Identification & Awareness Course, Basic Criminal Investigators Course, Criminal Patrol/Conducting Complete Traffic Stops Training, FBI-LEEDA/LifeLock Identity Theft Summit, Terrorism Response Tactics - Exterior Response to Active Shooter Events (ERASE) Course, Developing Long Term Criminal Informants Course, National Improvised Explosives Familiarization Course, Terrorist Weapons, Tactics & Techniques Course, Outlaw Motorcycle Gangs and the Narcotics Connection Course, Active Shooter Events and Response (ASER) Course, Search Management Awareness for Law Enforcement Course

Your AFFIANT holds a Bachelor of Science in Sociology and Anthropology with a primary focus in Criminal Justice from ***Towson University*** located in Towson, Maryland.

Your AFFIANT has investigated and assisted with numerous assaults, child abuse, fraud, burglary, theft, malicious destruction of property, unattended death, suicide, controlled dangerous substance (CDS) and other criminal investigations, resulting in the arrest and conviction of individuals involved in the aforementioned crimes.

Your AFFIANT knows through his criminal investigation experience that individuals perpetrating the aforementioned crimes often attempt to conceal property, evidence, contraband and fruits of the crime on their person, in their vehicles, in their place of residency or employment and other areas of storage such as garages, sheds, safe deposit boxes, cellular telephones, digital cameras, computers, removable storage media, etc.

**EXHIBIT 5**

APPLICATION AND AFFIDAVIT FOR SEARCH AND SEIZURE WARRANT

## COMPUTER AND INTERNET DEFINITIONS:

Through training and experience as well as information received from Computer Forensic Examiners, your AFFIANT has come to be familiar with the following computer and Internet definitions or explanations of how computers and the Internet work. Your AFFIANT has set forth these definitions because they are pertinent to the facts establishing probable cause.

*Internet Protocol (IP) Address* – An IP address is a unique number assigned to every machine that is on the internet. If a machine does not have an IP address, it cannot connect to the internet. There currently are two types of IP addresses, IPv4 and IPv6. An IPv4 address is a unique number consisting of four parts separated by dots. An example of an IPv4 address is "165.113.245.2." An IPv6 address is represented as eight groups of hexadecimal numbers with the groups being separated by colons. An example of an IPv6 address is "2001:cdba:0000:0000:0000:0000:3257:9652." Many computers, particularly those that provide web services, make use of the *Domain Name System* or "DNS." DNS translates IP addresses to more easily memorized names such as "www.google.com" or "www.facebook.com." A computer does not need a DNS name to connect to the internet.

*Globally Unique Identifier (GUID)* - A GUID is a software alpha numeric identification number generated when a file sharing program, such as LimeWire, is installed on a computer and is unique to that installation.

*Maxmind.com* - Maxmind is a website that assists in identifying Internet Protocol addresses and geo-locating an area where the IP address returns. Maxmind is a provider of IP intelligence and online fraud detection and will identify the Internet Service Provider (ISP) when a IP address is searched through the website.

*Hash Values* - Hash values can be thought of as fingerprints for files. The contents of a file are processed through a cryptographic algorithm, and a unique alphanumeric value – the hash value - is produced that identifies the contents of the file. A file normally consists of hundreds if not thousands of bytes and if even one byte is modified in any way, the value of the hash will also change significantly. Some of the algorithms that are currently used to produce hash values are: the MD4, MD5, SHA1, and SHA1 (base 32) algorithms.

## INFORMATION KNOWN ABOUT CHILD EXPLOITATION AND COMPUTER RELATED INVESTIGATIONS:

Based on your AFFIANT's training and experience in the area of computer crimes relating to child pornography and online sexual child solicitation, your AFFIANT has learned the following:

Computers and the Internet have revolutionized the way those individuals with a sexual interest in children operate. Where previously individuals with a sexual interest in children had to rely on personal contact, mailings and telephone calls in order to

Case 8:19-cr-00348-PX   Document 147-5   Filed 05/05/23   Page 4 of 14
08/14/2018  21:37   301-725-6383           FEDEX OFFICE      0917              PAGE  05

**EXHIBIT 5**

## APPLICATION AND AFFIDAVIT FOR SEARCH AND SEIZURE WARRANT

facilitate a relationship with a child they can now use a computer with an Internet connection to locate, interact with, and meet with children.

Devices known as Network Interface Cards (NIC) or modems allows any computer to connect to another computer through the use of telephone or cable lines. By connection to a host computer, electronic contact can be made to millions of computers around the world. A host computer is one that is attached to a dedicated network and serves many users. These host computers are sometimes commercial entities, such as America Online (AOL), which allow subscribers to dial a local number and connect to a network that is in turn connected to their host systems. Most recently the use of wireless Internet connection (Wi-Fi) and the development of smart phones have further enabled the ability to use the Internet while being mobile. Wi-Fi can be used to access the Internet from outside of a residence, or at a local business that supports a wireless connection known as a "Hotspot". A Hotspot is a site that offers Internet access over a wireless local area network through the use of a router connected to a link to an Internet service provider. Hotspots typically use Wi-Fi technology. Hotspots may be found in coffee shops, airports, and various other public establishments. The development of smartphones use cellular phone signal to access the Internet through the cellular phone providers. A smartphone is a mobile phone that offers more advanced computing ability and connectivity. Smartphones may be thought of as handheld computers integrated within a mobile telephone. Smartphones run complete operating systems software providing a platform for application developers. A smartphone can be considered as a Personal Pocket Computer with mobile phone functions because these devices are mainly computers, although quite smaller than a desktop computer. Many smartphones as well as Apple's IPod and IPad can also access the Internet using a wireless Internet connection. Laptop computers, smartphones, IPod and IPad, can access the Internet, share information as well as store information. Mobile devices such as laptop computers, smartphones, IPod, IPad and digital media storage devices are known to be used and stored in vehicles, on persons or other areas outside of the residence.

In addition to the use of large service providers, pornographers and those persons with a sexual interest in children can use standard Internet connections, such as those provided by businesses, universities and government agencies to communicate with each other and to distribute pornography. These communication links allow contact around the world. These communications can be quick, secure and generally anonymous.

The use of computers and the Internet is fast becoming the preferred method of operation for individuals intending to exchange sexually explicit images of children. These individuals often retain these images in digital file folders on computer data storage devices for long periods of time and tend to re-access these files with varying regularity, often for their personal, sexual gratification. Persons who collect child pornography tend to maintain their collection so that they have immediate access to it. They often maintain and possess their sexually explicit material in the privacy and security of their homes and/or other secure locations. In addition, many Internet service providers allow for direct access to "offsite" storage through the use of the World Wide

Case 8:19-cr-00348-PX Document 107-5 Filed 05/05/23 Page 5 of 14
08/14/2018    21:37    301-725-6383           FEDEX OFFICE    0917              PAGE  06

**EXHIBIT 5**

APPLICATION AND AFFIDAVIT FOR SEARCH AND SEIZURE WARRANT

Web. E-mail accounts like Yahoo!, and Gmail provide one (1) gigabyte or more of data storage without any charge. These types of accounts may be utilized as supplemental storage to the computer's hard drive with just a click of the mouse.

While typical internet service providers (ISP) assign IP addresses dynamically to their subscribers, your AFFIANT has learned that IP addresses can be assigned to a subscriber for an extended amount of time to include but not limited to; one (1) year. The dynamic assigning of IP addresses facilitates a multitude of advantages for the ISP, but when a subscriber retains an IP address for an extended amount of time this is due to the IP being reassigned to the same user. This could be a result of the connection always remaining online.

With the proliferation of commercial services that provide both electronic mail and chat room services and easily accessible Internet access, the computer has become the preferred method of child pornography distribution.

Your AFFIANT also knows from training and experience that individuals interested in child pornography may also be involved in the actual abuse and sexual assault of children. These individuals may use camera equipment to manufacture and produce child pornography of their victims. The victims may not be aware they are being filmed because offenders commonly use hidden camera equipment to film the victim. Evidence that child pornography was manufactured will likely be on digital storage devices such as SD memory cards and tapes contained within the cameras. Often, the victims are family members and/or other children within the residence. In these cases, the clothing of children, bedding and other items within the residence are sometimes observed in homemade child pornography videos. The seizure of these items is necessary to provide evidence of the production and/or manufacture of child pornography.

Your AFFIANT knows from training and experience that individuals who are involved with sexual exploitation of children and child pornography, rarely, if ever, dispose of their sexually explicit materials. It is also known that these individuals would not quickly dispose of pictures and videos but retain them for their own future sexual gratification.

## **EXAMINATION OF DIGITAL EVIDENCE**

Your AFFIANT knows from training and experience that in order to safely search computers and other computer storage media, the computer must be seized in a specific manner guaranteed to protect both the hardware and the data contained within. Your AFFIANT knows that a computer search must be completed in a controlled environment such as those areas set aside for this purpose where special hardware and software will be available. Your Affiant knows that a forensic examination may take days or weeks, and that it must be done in a specific manner both to guarantee the protection of the data and to assure the admissibility of the evidence for prosecution purposes.

Your AFFIANT believes that information related to the aforementioned crimes will

Case 8:19-cr-00348-PX   Document 147-5   Filed 05/05/23   Page 6 of 14
08/14/2018  21:37   301-725-6383           FEDEX OFFICE      0917                     PAGE  07

**EXHIBIT 5**

APPLICATION AND AFFIDAVIT FOR SEARCH AND SEIZURE WARRANT

likewise be recorded in some format on the computer's hard drive and/or on floppy diskettes or other media on which data is stored, such as hard disks, floppy disks, JAZ disks, ZIP disks, USB Thumb Drives, integral RAM or ROM units, cassette tapes, magnetic tape reels, and any other permanent or transient storage devices. Some devices can be as small as a thumbnail and store two or more gigabytes of data.

Laptop computers are often stored in cases that often contain other hardware components capable of storing information, such as external hard drives, compact disks, or memory cards. Experience has shown that people, who possess laptop computers, when not storing them in their residence, often keep them locked in a personally owned motor vehicle or some other motor vehicle under their control.

Your AFFIANT knows that searching computerized information for evidence or instrumentalities of crime commonly requires the seizure of computing or data processing devices and associated peripheral equipment such as computer units, keyboards, central processing units, external drives and/or external storage, tape and/or disk, terminals and/or video display units and/or other receiving devices and peripheral equipment such as printers, automatic dialers, modems, acoustic couplers, associated telephone sets, and any other controlling devices so that a qualified computer examiner can accurately retrieve the system's data in a laboratory or other controlled environment. This is true because of the following:

The peripheral devices, which allow users to enter or retrieve data from the storage devices, vary widely in their compatibility with other hardware and software. Many systems storage devices require particular input/output (or I/O) devices in order to read the data on the system. It is important the analyst be able to properly reconfigure the system as it now operates in order to accurately retrieve the evidence listed above. In addition, the analyst needs the relevant system software (operating systems, interfaces and hardware drivers) and any applications software, which may have been used to create data (whether stored on hard drives or on external media) as well as all related instruction manuals or other documentation and data security devices.

Cloud storage is a computing model in which data is stored on remote servers accessed from the Internet, or "cloud." It is maintained, operated and managed by a cloud storage service provider on storage servers that are built on virtualization techniques. Cloud storage has become very popular in the recent years and many people use cloud storage, such as Dropbox, Mega, Apple iCloud, Google Drive, Microsoft OneDrive, Box, etc. to store, access and share data such as images, videos, emails and other electronic data using the internet. It is common for digital device users to "backup" and/or sync digital data with other devices and cloud storage providers. The backup and synced events can occur automatically in the background of the device(s) and manually either through way of Bluetooth, WiFi, Cellular Service, and the Internet or by connecting one device to another device. If a file is deleted from one device and a backup or sync occurs with another device and/or with cloud storage, it is possible the deleted file will transfer back onto the device. For example, an individual using an Apple iPad can backup the device on their Apple Mac computer and they can backup their files on Apple iCloud. When the files are backed up on their computer, a

## APPLICATION AND AFFIDAVIT FOR SEARCH AND SEIZURE WARRANT

forensic examiner is able to gain access to the computer backup and obtain data that was on the mobile device. A forensic examiner also has the capability to gain access to the cloud storage data files that are stored remotely on the cloud storage provider's servers/computers that were on a mobile device. For example, when an individual with an Android mobile device conducts a backup of their phone to Google Drive, user data on their mobile device is uploaded/transferred to the Google Drive server. The user(s) may also choose to save, access and share individual file(s) on the cloud storage provider's remote servers.

It is possible to recover deleted digital files (i.e. image/video files) months or years after they are deleted from the computer system. This is because deleted data remains on a device, and/or storage media device until it is over-written with new data. As previously mentioned, Cloud storage allow the user(s) to automatically backup and/or sync digital data between all digital devices with the cloud storage site and/or social media accounts, many times in the background, or in the control of the user(s). Application data is also stored and/or synced between digital devices and social media/networking accounts. When a user(s) of a cloud storage area (i.e. Google Drive) and/or a social media account (i.e. Facebook) downloads the application onto the digital device, the name & password are commonly stored on the device and allow the device to automatically connect to the social media account site or the cloud storage area. When the digital device is analyzed it is possible to retrieve the account information (username & password). Thus, the analyst has access to data, not stored on the device, but stored in the cloud storage areas and it is possible in a forensic lab setting to extract the data from the social media/network servers and/or cloud storage areas. For example: Facebook messages may or may not be stored on the digital device but are retrievable from the user(s) account on the Facebook servers.

## COMMON CHARACTERISTICS TO INDIVIDUALS INVOLVED IN THE RECEIPT AND COLLECTION OF CHILD PORNOGRAPHY:

Based upon your AFFIANT's training, knowledge, and experience in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom your AFFIANT has had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography.

Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are

**EXHIBIT 5**

## APPLICATION AND AFFIDAVIT FOR SEARCH AND SEIZURE WARRANT

attempting to seduce, to arouse the selected child partner, or to demonstrate desired sexual acts;

Collectors of child pornography sometimes possess and maintain their "hard copies" of child pornographic material; that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location, such as a private office. Child pornography collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, images of child erotica, and videotapes for many years.

Collectors of child pornography prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

The evidence sought by this search warrant is believed to be present due to the fact that people with collections of child pornography typically keep their collection for long periods of time. Even if the child pornography was deleted, the Maryland State Police Computer Crimes Unit or any other trained Forensic examiner can recover deleted files long after the files have been deleted. The staleness of digital evidence had been addressed in the federal and state court system numerous times:

***Behrel v. State, 151 Md. App. 64 (2003)*** – Probable cause held not stale after 16 years in a child abuse case in which the victims, coming forward after 16 years, described a footlocker in which the defendant kept pornographic movies and other materials in at St. James Academy in Maryland.

***U.S. v. Lacy (9th Cir. 1997) 119 F.3d 742*** – Given the nature of the crime, good reason to believe the computerized visual depictions downloaded would be found in defendant's apartment 10 months later. The defendant was identified as a "collector of child porn."

***U.S. v Hay (9th Cir. 2000) 231 F.3d 630*** – Six month time period, between transmission of child pornography images from known trader of such images to Internet address accessible by defendant in his apartment and government's application for warrant to search computer system in apartment, did not render information about such transmission too stale to support warrant, in view of evidence that possessors of pornography stored much materials for long periods of time, and that files could be retrieved by computer expert even if deleted; government was not required to show pattern of activity to raise inference of long-term storage.

### *Freenet Peer-to-Peer Network:*

Freenet is a peer-to-peer platform intended for censorship-resistant, secure, and anonymous communication and file sharing on the Internet. Freenet works by storing small encrypted blocks of content distributed on the computers of its users and connecting through intermediate (peers) computers which pass on requests for content

APPLICATION AND AFFIDAVIT FOR SEARCH AND SEIZURE WARRANT

and send them back without knowing the contents of the complete file. A Freenet user wishing to download a file must first locate the file's manifest key, typically on a message board or a Freesite with material of interest. The Freenet software then retrieves this manifest and uses the list of keys it contains to request from other users of the network the blocks needed to recreate a file. Freenet stores two blocks for each one required to re-build the file. If one block cannot be found, another can be requested. Law enforcement has collected the manifests to suspected child pornography files that are publicly shared and created a database of the associated keys to the blocks of a file. Law enforcement Freenet nodes record requests that are sent to them and they are compared against these known keys to identify child pornography files being downloaded. The original requester node can be determined, with a fair probability, because the number of requests received is reduced significantly as each node forwards them. Using the number of requests received, the number of peers a requester has and the number of blocks the file contains we can calculate if the volume of requests received is significantly more likely than not from the original requester. That a Freenet user requested blocks associated with a particular file on Freenet indicates that the user attempted to download the file's contents from Freenet. It does not indicate whether or not the user successfully downloaded the file.

**In support of this application, and basis for probable cause, your AFFIANT deposes and says:**

On Monday, June 25, 2018, while reviewing data received by law enforcement Freenet nodes, Your AFFIANT observed IP address 71.246.207.59, with the Freenet Location ID 0.665146656496141, requesting blocks of suspected child pornography files. While Your AFFIANT cannot state with absolute certainty the user was the original requestor, based on a review of those requests it is significantly more probable than not that the user of IP address 71.246.207.59 was the original requestor of the files described below.

Your AFFIANT observed that between Sunday, June 24, 2018 at 1:35 PM UTC and Sunday, June 24, 2018 at 1:51 PM UTC the Freenet node at IP address 71.246.207.59 requested 29 unique blocks of the file with the SHA1 Hash of HDSTZVAQANSVKGICJ2R2YQLPDLYWPDHJ. This file can be downloaded from Freenet using the key CHK@oz72eZ5cC3ZoWSIar4IvGJEnLD973T~uCLQ8piCa4IU,~3vTBfudLOZZGFqBq1x aXdZdSP~Zx1K9aCcizayJre8,AAMC--8/5yo_suck_anal.mkv. Below is a description of the download.

**Filename:** 5yo_suck_anal.mkv

**Description:** This is a color video that is 6 minutes and 29 seconds in length. The video begins with a prepubescent Caucasian girl, reasonably believed to be under the age of 10 years old, laying on a bed, wearing a gray colored shirt with no pants or underwear. Also an adult males erect penis can be seen next to the females buttocks. The girl can later be seen masturbating the adult male's penis with her hands and later begins to perform oral sex on the adult male's penis. The adult male can later be seen

**EXHIBIT 5**

APPLICATION AND AFFIDAVIT FOR SEARCH AND SEIZURE WARRANT

positioning the girl to lay flat on her stomach with her buttocks in the air. The adult male can later be seen inserting his erect penis into the girl's anus and continues to have anal intercourse with the girl. At the end of the video the adult male can be seen masturbating the girl's vagina with his hand and then proceeds to lick her tongue.

Your AFFIANT observed that between Saturday, June 23, 2018 at 4:18 PM UTC and Monday, June 25, 2018 at 3:57 PM UTC the Freenet node at IP address 71.246.207.59 requested 132 unique blocks of the file with the SHA1 Hash of UYW6MSYX43TMOINBFKJSKWGQQWE24KAX. This file can be downloaded from Freenet using the key CHK@DlwLRcjlL0pCXx5X9dSG~2lhQGnXNOdXNekQI9BVAag,ePe~96nK~DbyunEnmqsZzr0JNrm~Wh26UA6uGx5swqI,AAMC--8/mummy%20from%20Russia%20who%20blows%20her%20little%20son%20Nr.%201%2020150525_150936.mp4. Below is a description of the download.

**Filename:** mummy from Russia who blows her little son Nr. 1 20150525_150936.mp4

**Description:** This is a color video that is 2 minutes and 14 seconds in length. The video begins with a nude prepubescent Caucasian boy, due to the size of the boy's body it is reasonably believed that the child is under the age of 3 years old, laying nude on what appears to be a bed, with his penis exposed to the camera. An adult female's hand can be seen masturbating the boy's penis with her fingers. The adult female can later be seen performing oral sex on the boy's penis.

Your AFFIANT observed that between Sunday, June 24, 2018 at 2:27 PM UTC and Sunday, June 24, 2018 at 2:55 PM UTC the Freenet node at IP address 71.246.207.59 requested 24 unique blocks of the file with the SHA1 Hash of ICELHH4OEK2UYQ4DXG2DFVQUL25SMAWP. This file can be downloaded from Freenet using the key CHK@5tPwbZ5VzDTMHJA6Obr~5eharyKeUb-3GpHKiFghNNc,E69Yk0z~pIzB7G9topEUJkr1wcA7PacDkofot0OT8KY,AAMC--8/Webcam-Keila%2011yo%20Redhead%20SUPER%20HOT%2001.avi. Below is a description of the download.

**Filename:** Webcam-Keila 11yo Redhead SUPER HOT 01.avi.

**Description:** This is a color video that is 34 minutes and 5 seconds in length. The video begins with a prepubescent Caucasian girl, reasonably believed to be 10-12 years old, sitting on a toilet in a pink bathrobe. During the video the girl can be seen opening her robe and exposing her under developed breasts to the camera. Later in the video the girl can be seen standing up and exposing her vagina to the camera. Throughout the video the girl can be seen placing her pink bathrobe on and off. In the last scene of the video the girl can be seen sitting down, nude, and separating her vagina to the camera.

On Monday, June 25, 2018, a check on the IP address 71.246.207.59 was conducted through Maxmind's database of IP addresses. Maxmind indicated that the IP address is registered to Verizon Fios Business and is believed to be used in the

**EXHIBIT 5**

## APPLICATION AND AFFIDAVIT FOR SEARCH AND SEIZURE WARRANT

Columbia, MD area. Your AFFIANT completed a subpoena to obtain records/documents and forwarded the subpoena to the Howard County State's Attorney's Office.

On Thursday, July 5th, 2018 Your AFFIANT received Verizon's Subpoena Compliance. Verizon advised that the customer name was "Resonant Information" and the account address as 13504 Briarcroft Ct. Laurel, MD 20708. Verizon also provided a contact telephone number of (240) 25-0574 and contact email of ZED@MATH.LSU.EDU. Due to the customer name being "Resonant Information", on Monday July 9th, 2018 at approximately 0745 hours Your AFFIANT contacted Verizon's Legal Team and requested further clarification. Upon making contact with Verizon, the analyst advised that "Resonant Information" is the company name that the service is assigned to.

Your AFFIANT conducted a check through the department of Assessments and Taxation which revealed Alakomzed Crayne Pobre and Lynne Angela Valencic are the owners of 13504 Briarcroft Ct., Laurel, MD 20708. Your AFFIANT also conducted a check through the Motor Vehicle Administration database which revealed Alakomzed Crayne Pobre and Lynne Angela Valencic are listed at 13504 Briarcroft Ct., Laurel, MD 20708. Your AFFIANT also conducted a check through the U.S. Postal Service and confirmed that Lynne Valencic and Alakomzed Pobre receive mail at 13504 Briarcroft Ct., Laurel, MD 20708. While conducting surveillance on Tuesday, August 7th, 2018 Your AFFIANT observed a silver 2012 Honda Fit (Maryland Registration: 8AN3022), registered to Alakomzed Crayne Pobre in the driveway of 13504 Briarcroft Ct., Laurel, MD 20708.

Your AFFIANT, **Trooper First Class C. Mills #6293** has personal knowledge of the facts and information contained herein, as a result of his own investigative efforts and/or the efforts of other law enforcement officers involved in this case. Those facts not personally discovered are documented in written reports submitted by other law enforcement officers.

Subsequently, Your AFFIANT believes there to be sufficient probable cause for the issuance of a Search and Seizure Warrant.

**Your AFFIANT, therefore, prays that a Search and Seizure Warrant be issued authorizing law enforcement the necessary and proper assistance to:**

1. Enter and search the residence as completely described above and any person/s within the curtilage or who enter the curtilage after the search and seizure has been executed for evidence of the aforementioned crime(s), to include evidence of Child Pornography and/or Sexual Child Exploitation.

2. Seize, preview and examine any cellular phones. Seizure shall occur within fifteen (15) days of the issuance of the warrant and shall continue for the duration of investigation so that forensic analysis of the device may be conducted.

## APPLICATION AND AFFIDAVIT FOR SEARCH AND SEIZURE WARRANT

3. Seize, preview and examine any and all magnetic media: Jaz discs, hard drives, floppy discs, Zip drives, any PCMCIA drives, and Bernoulli discs or tapes of any type. Seizure shall occur within fifteen (15) days of the issuance of the warrant and shall continue for the duration of investigation so that forensic analysis of the media may be conducted.

4. Seize, preview and examine any Optical media to include but not limited to CD Rom, CDR, CDR-W, DVD, DVD-Rom or optical discs. Seizure shall occur within fifteen (15) days of the issuance of the warrant and shall continue for the duration of investigation so that forensic analysis of the media may be conducted.

5. Seize, preview and examine any computer hardware capable of analyzing, collecting, displaying, receiving, or transmitting data electrically, magnetically or optically. Hardware includes: central processing unit, portable computers (I.E. laptops, IPADS, tablets), file servers, peripheral input/output devices (I.E. key boards, plotters, pointing devices, printers, scanners, and video display monitors), storage devices capable of reading and/or writing to computer media (I.E. electric, magnetic, optical), communication devices (I.E. modems, cable modems, network adapters and wireless communication devices), any device or parts used to restrict access to computer hardware (I.E. keys, locks), and any other piece of equipment necessary to duplicate the function of hardware at the time of seizure (I.E. batteries, cables, instruction manuals, power cords). Seizure shall occur within fifteen (15) days of the issuance of the warrant and shall continue for the duration of investigation so that forensic analysis of the hardware may be conducted.

6. Seize, preview and examine any cameras and media storage. Cameras include DSLR (Digital Single Lens Reflex) cameras, Compact cameras, and any "hidden" or "spy" cameras. Camera media storage devices include: Compact Flash cards, Secure Digital (SD) cards, Multi Media Memory cards, xD Picture cards, Memory stick, Micro Drive, Smart Media, Portable Digital Storage Devices, and cassettes. Seizure shall occur within fifteen (15) days of the issuance of the warrant and shall continue for the duration of investigation so that forensic analysis of the devices may be conducted.

7. Search the following locations about the residence described above to include but not limited to; any outbuildings, locked or unlocked safes, any vehicles located on the property at the time of the search for evidence of the aforementioned crimes, to include evidence of Child Pornography.

8. Seize, preview and examine any and all electronic data processing and computer data storage devices, including: central processing units, internal and peripheral storage devices such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, optical readers and scanning devices, CD Rom drives and compact disks and related hardware, digital cameras and digital storage media devices (I.E. thumb drives), operating logs, software and operating instructions or operating manuals, computer manuals, software and programs used to communicate with other terminals via telephone or other means, and any computer modems, monitors, or printers. Seizure shall occur within fifteen (15) days of the

## APPLICATION AND AFFIDAVIT FOR SEARCH AND SEIZURE WARRANT

issuance of the warrant and shall continue for the duration of investigation so that forensic analysis of the device may be conducted.

9.  Seize, preview, import and examine all cloud storage data files located and stored on remote server storage space belonging to or associated with the suspect. These files may include, but are not limited to: Photos, Videos, Emails, Calendars, Contacts, Location History, Text Messages, Chats, My Activity, Tasks, and any other information pertaining to the suspect. Cloud storage accounts include, but are not limited to: Dropbox, Google Drive, Microsoft OneDrive, Apple iCloud, WhatsApp, Facebook, Instagram, Kik, Twitter, Vkontakte, Box, Hotmail, Gmail, Yahoo, Huawei, or any other cloud storage or application account. Seize, preview, import and examine any and all electronic cloud storage backups and other backups on computers and mobile devices. Seizure shall occur within fifteen (15) days of the issuance of the warrant and shall continue for the duration of investigation so that forensic analysis of the device may be conducted.

10. Seize any photographs, magazines, motion pictures, videotapes, books, slides, drawings, negatives, undeveloped film or other items related to sexual abuse of children, child pornography or co-conspirators in the distribution, production, possession of Child Pornography and/or Sexual Child Exploitation.

11. Seize any clothing, bedding or any other items observed in the home which are also observed in any child pornography media files (pictures or videos) found during the on scene forensic preview of digital evidence devices.

12. Seize documents and effects which tend to show dominion and control over said location, including fingerprints, clothing, handwritings, documents and effects which bear a form of identification such as a person's name, address, photograph, Social Security number or driver's license number.

13. Search for any logs and any onsite computer network storage used by the suspect which may contain evidence pertaining to network computer traffic conducted by the user in the perpetration of the aforementioned crimes.

14. Search for passwords and data security devices. Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation or data. Data security devices may consist of hardware, software, or other programming code. A password (string of alpha-numeric characters) usually operates as a sort of digital key to unlock particular data security device(s). Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it. These items will be seized in order to facilitate the search of the computer systems/computer system components/computer systems storage media named above.

**EXHIBIT 5**

## APPLICATION AND AFFIDAVIT FOR SEARCH AND SEIZURE WARRANT

15. Open any containers, envelopes, boxes, packages, or safes to examine the contents and seize any of the aforementioned items.

16. Leave a copy of this warrant, the affidavit and application in support thereof, together with an inventory of the property seized.

17. Return a copy of this warrant, the affidavit, and application in support thereof, together with an inventory of the property seized, if any, to me within ten (10) days after the execution of this warrant, or if not served, you are to return this warrant to me promptly after its expiration as required by law.

AFFIANT: _TFC C. / #6293_           Date/Time: _8/13/18  1135_
   Trooper First Class C. Mills #6293

Before me, a District Court Judge of the State of Maryland in and for __Howard__ County, this 13th day of **August** in the year **2018**, personally appeared *Trooper First Class C. Mills #6293* of the Department of Maryland State Police, before me or properly identified to me, and he has made an oath that the contents of the foregoing document are true and correct.

Judge: _____           Date/Time: _8/13/18 @ 11:35 A_

**This affidavit is composed of 14 pages.**